# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# HOT SPRINGS DIVISION

**PRM ENERGY SYSTEMS, INC.**                                  **PLAINTIFF**

            v.            Civil No. 05-6022

**KOBE STEEL, LTD.**                                                **DEFENDANT**

## O R D E R

Now on this 15th day of November, 2005, come on for consideration the following motions:

*    **Kobe Steel, Ltd.'s Motion To Dismiss Plaintiff's Complaint** (document #7);

*    plaintiff's **Motion For Leave To File First Amended Complaint** (document #14); and

*    **Kobe Steel, Ltd.'s Renewal Of Motion To Dismiss Plaintiff's Complaint** (document #22),

and from said motions, the supporting documentation, and the responses thereto, the Court finds and orders as follows:

1. In this diversity case, plaintiff PRM Energy Systems, Inc. ("PRM") alleges that defendant Kobe Steel, Ltd. ("Kobe") is liable to it for tortious interference with contract and for civil conspiracy. Kobe has moved to dismiss the Complaint, alleging insufficiency of service, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. PRM, for its part, has moved for leave to shore up its Complaint, and opposes the dismissal.

2. The Court turns first to the issue of service of process. PRM initially attempted service of process on March 25, 2005, by delivering a copy of the Summons and Complaint to an employee of Kobe who was in Little Rock, Arkansas, to testify at an arbitration. PRM then, on the same day that Kobe filed its first motion to dismiss, sought leave of Court to utilize the services of Crowe Foreign Services to serve Kobe pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, as provided in **F.R.C.P. 4(f)**. An Order allowing such service was entered on May 31, 2005, and PRM was also given additional time to perfect service and respond to the motion to dismiss.

On October 25, 2005, PRM filed a Notice Of Service, stating that service had been perfected in accordance with the Hague Convention as of August 24, 2005, and that a translation of the Certificate/Attestation of such service would be filed immediately upon receipt. That translation was filed on October 27, 2005, showing that Kobe was served with process according to the requirements of the Hague Convention on August 24, 2005, by mail received by Reiko Ikeda, an employee of Kobe.

In its second motion to dismiss, filed on September 13, 2005, Kobe notes that "[o]n August 24, 2005, Plaintiff caused to be delivered to Kobe a copy of the Complaint," and that it "specifically denies that Plaintiff has obtained effective service

of process. . . ." No reason is given for this denial, however, and the service of process appears to the Court to be in order. The Court, therefore, finds that service of process on Kobe has been perfected.

3. Prefatory to its disposition of the other issues, the Court will next address PRM's motion for leave to amend its Complaint to add information it learned after the Complaint was filed. Leave to amend should be freely given when justice so requires. **F.R.C.P. 15(a)**. The Court will, therefore, allow PRM to file its Proposed Amended Complaint, and as a result, will examine the arguments made by Kobe in support of dismissal in light of the proposed First Amended Complaint.

4. Kobe next contends that the Court lacks personal jurisdiction over it. While PRM has the burden of proving that the Court has personal jurisdiction over Kobe, to defeat Kobe's motion it need only make a prima facie showing of jurisdiction. Where, as here, the Court relies on pleadings and affidavits, rather than an evidentiary hearing, to resolve the issue, it must look at the facts in the light most favorable to PRM, and resolve all factual conflicts in favor of PRM. **Dakota Industries, Inc. v. Dakota Sportswear, Inc.**, **946 F.2d 1384 (8th Cir. 1991)**.

The Eighth Circuit has had many opportunities to review the requirements of personal jurisdiction in a diversity case such as the one at bar. The relevant principles may be quoted from one

such case, **Burlington Industries, Inc. v. Maples Industries, Inc.**, **97 F.3d 1100 (8th Cir. 1996),** as follows:

> In a diversity action, a federal court may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state, and by the due process clause of the Fourteenth Amendment. We have previously recognized that the Arkansas long-arm statute authorizes jurisdiction over foreign corporations to the fullest extent allowed by constitutional due process.
>
> Due process requires "minimum contacts" between the non-resident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice. The defendant's conduct and connection with the forum state must be such that defendant should "reasonably anticipate being haled into court there."
>
> Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.
>
> Where specific personal jurisdiction over a non-resident is asserted, due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities.

(Internal citations omitted.)

**Burlington** sets out five factors to be considered in evaluating a challenge to personal jurisdiction:

* the nature and quality of defendant's contacts with Arkansas;

* the quantity of defendant's contacts with Arkansas;

* the relationship between defendant's contacts with

Arkansas and the cause of action asserted against it;

* the interests of Arkansas in providing a forum for plaintiff to resolve its dispute with defendant; and

* the convenience of the parties.

The first three of these factors are the most important, with the last two being of lesser importance.

5. In support of its contention that the Court lacks personal jurisdiction over it, Kobe submits the Declaration of Masahiro Motoyuki, Manager of the Iron Unit Division of Kobe, made pursuant to **28 U.S.C. §1746.** Motoyuki avers the following with regard to Kobe's contacts with the State of Arkansas:

* that Kobe is not qualified or registered to do business in the State of Arkansas, and does not regularly transact business here;

* that Kobe does not have an interest in or use any real property in Arkansas;

* that in the past ten years, Kobe's sales to Arkansas have amounted to less than 0.01 per cent of its annual revenues, and comprise "shipments of samples, a coating machine . . ., spare parts and maintenance services to two Arkansas companies," neither of which is involved in this lawsuit;

* that Kobe has never derived substantial revenue from goods used or consumed in Arkansas;

-5-

* that Kobe representatives do not generally travel to Arkansas in its regular course of business;

* that Kobe does not have an office, a telephone listing, a bank account, or any employees in Arkansas;

* that starting with a telephone call from its London office to PRM's Arkansas office on February 14, 2002, it engaged in discussions with PRM about a potential business transaction involving the licensing of PRM's gasification technology;

* that between February, 2002, and October, 2004, there were approximately 20 e-mails and 5 phone calls between Kobe in Japan and PRM in Arkansas relating to the transaction;

* that in May, 2002, two Kobe representatives traveled to Arkansas to investigate certain gasification technology, and while here, "toured two commercial gasification plants and investigated the technology"; and

* that ultimately, Kobe and PRM did not enter into the license agreement contemplated by the business transaction.

PRM does not dispute the number and type of contacts Kobe admits to having had with the State of Arkansas. However, in addition to those admitted contacts, PRM offers the deposition testimony of Tsuyoshi Uesugi, who is in charge of marketing

energy-related technology for Kobe.[1]  Giving the testimony of Uesugi the inferences most favorable to PRM, it could be concluded that Kobe's representatives traveled to Arkansas to investigate the gasification technology, and that Kobe, desiring to obtain the technology on terms more advantageous than those offered by PRM, became involved with one of PRM's licensees, Primenergy, L.L.C., in a scheme to avoid the contractual relationship between PRM and Primenergy.

6.  The Court has no hesitancy in finding that it lacks general personal jurisdiction over Kobe, and in fact, PRM does not appear to seriously contend that this Court has such jurisdiction. PRM's contentions are focused, instead, on the issue of specific jurisdiction, which it argues exists under the reasoning of **Calder v. Jones, 465 U.S. 783 (1984).**  In that case, the Supreme Court held that a California court had personal jurisdiction over Florida residents alleged to have committed an intentional tort against a California resident, the effects of which were felt in California.

The principles behind **Calder** have been used to justify the exercise of specific personal jurisdiction over defendants who

---

[1] PRM suggests, in its brief, that Kobe's motions to dismiss have been converted into motions for summary judgment by the submission of evidence in support of the personal jurisdiction issue. **F.R.C.P. 12(b)** provides that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. . . ." That rule does not apply to motions asserting the defense of lack of jurisdiction over the person, set forth at **F.R.C.P. 12(b)(2)**.  See, e.g., **Stevens v. Redwing, 146 F.3d 538 (8th Cir. 1998).**

have never entered the forum state, **Oriental Trading Co. v. Firetti**, **236 F.3d 938 (8th Cir. 2001),** and the Court finds those principles applicable here.  Kobe admits that in addition to a series of e-mails and telephone calls related to the prospective licensing transaction, two of its representatives came to Arkansas for the purpose of investigating PRM's gasification technology.  While a jury may ultimately find that this visit -- and all of Kobe's subsequent activities -- were completely legitimate, that is not the Court's prerogative in resolving the pending motion.  When the evidence is given the inferences most favorable to PRM, the Court concludes that, although the number of Kobe's contacts with Arkansas is relatively small, the nature and quality of those contacts are such that it can be said that Kobe purposely directed its activities at PRM, a forum resident.  The allegations of the proposed First Amended Complaint are such that it can also be said that this litigation results from alleged injuries said to arise out of and relate to those contacts.  Certainly the State of Arkansas has an interest in providing a forum for its resident, PRM, to resolve its dispute with Kobe.  Thus, the first four of the **Burlington** factors militate a finding of personal jurisdiction over Kobe.  Nothing is contended as to the convenience of either party, and this factor can be given no weight in the Court's analysis.  The Court, therefore, finds that it has specific personal jurisdiction over Kobe for the purpose of resolving the

claims of intentional torts asserted by PRM.

7.   Kobe's last contention is that the Complaint should be dismissed for failure to state a claim upon which relief can be granted, pursuant to **F.R.C.P. 12(b)(6)**.  It is axiomatic that a complaint should not be dismissed on this basis unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," and that the complaint must be viewed in the light most favorable to plaintiff.  **Krentz v. Robertson Fire Protection District**, **228 F.3d 897 (8th Cir. 2000).**  Under the notice pleading standard of **F.R.C.P. 8(a),** "a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'."  **Swierkiewicz v. Sorema N.A.**, **534 U.S. 506 (2002).**

The claims asserted by PRM against Kobe are tortious interference with contract and civil conspiracy.  In order to state a claim for tortious interference as against Kobe, PRM's pleading must put Kobe on notice that it claims the following:

*   that PRM had a valid contract with Primenergy;
*   that Kobe knew of PRM's contract with Primenergy;
*   that Kobe intentionally interfered, causing a breach of PRM's contract with Primenergy; and
*   that this breach damaged PRM.

-9-

**Stewart Title Guaranty Co. v. American Abstract & Title Co.**, --- Ark. ---, --- S.W.3d ---, 2005 WL 2562946 (2005).

In order to state a claim for civil conspiracy, PRM's pleading must put Kobe on notice that it claims the following:

*   that Kobe and Primenergy (or the principals of Primenergy) worked together to accomplish a purpose that is unlawful or oppressive, or to use unlawful or oppressive means to bring about injury to PRM; and
*   that Kobe had a specific intent to accomplish the contemplated wrong.

**Allen v. Allison**, 356 Ark. 403, 155 S.W.3d 682 (2004).

The allegations in the proposed First Amended Complaint are sufficient to put Kobe on notice that PRM claims the following:

*   that it had a valid contract with Primenergy;
*   that Kobe knew of PRM's contract with Primenergy;
*   that Kobe knew Primenergy's contract with PRM did not include selling the gasification technology in Japan;
*   that Kobe wanted Primenergy to breach its contract with PRM by selling to Kobe in Japan because Kobe expected to obtain the gasification technology from Primenergy on better terms than PRM was offering;
*   that Kobe wanted to influence contract negotiations between PRM and Primenergy in order to obtain the gasification technology on better terms than PRM was

>     offering;
>
> *   that ultimately the conduct of Kobe, in conjunction with the conduct of Primenergy (or its principals) was such that the relationship between PRM and Primenergy was destroyed; and
>
> *   that PRM sustained damages thereby.

The Court believes that these allegations suffice to give Kobe notice of what PRM's claims are, and the grounds upon which they rest, and that the proposed First Amended Complaint is not susceptible of dismissal for failure to state a claim.

**IT IS THEREFORE ORDERED** that **Kobe Steel, Ltd.'s Motion To Dismiss Plaintiff's Complaint** (document #7) and **Kobe Steel, Ltd.'s Renewal Of Motion To Dismiss Plaintiff's Complaint** (document #22) are **denied**.

**IT IS FURTHER ORDERED** that plaintiff's **Motion For Leave To File First Amended Complaint** (document #14) is **granted**.

**IT IS SO ORDERED.**

                                             **/s/ Jimm Larry Hendren**
                                             **JIMM LARRY HENDREN**
                                             **UNITED STATES DISTRICT JUDGE**